IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| Joseph D. Allen, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER ON SUMMARY JUDGMENT** |
| vs. | ) | **MOTIONS** |
| | ) | |
| United States Air Force, | ) | Case No.  2:07-cv-03 |
| | ) | |
| Defendant. | ) | |

Before the Court are Plaintiff Joseph Allen's Motion for Summary Judgment (Doc. #21) and

"Addendum to Motion for Summary Judgment" (Doc. #23), and Defendant United States Air

Force's Cross-Motion for Summary Judgment (Doc. #27).  The Court, having considered all of the

briefs and documents filed by the parties, now issues this memorandum opinion and order.

## SUMMARY OF DECISION

The Court concludes that the military tribunal gave full and fair consideration to the claims

Allen raised before it and did not err in its analysis or in rejecting them.  The Court further concludes

that it is without jurisdiction to address the claims Allen raises for the first time before this Court,

and even if they were properly before the Court, they have no merit.  Therefore, Plaintiff Joseph

Allen's Motion for Summary Judgment is DENIED, and Defendant United States Air Force's

Motion for Summary Judgment is GRANTED.

## BACKGROUND

Joseph Allen's Complaint arises out of a court-martial conviction.  Allen alleges his

constitutional rights to a speedy trial, to due process, to counsel of his choice, and to confront all

witnesses against him were violated by the government.  He also alleges his right to be brought to

trial in accordance with Rule 707 of the Rules for Courts-Martial ("R.C.M.") was violated, as was

his right to review of his conviction by the United States Air Force Court of Criminal Appeals.  He

requests from this Court "habeas relief and civil damages."  (Doc. #3, p. 1).

To understand Allen's claims, an outline of the court-martial proceedings follows.  Allen

served on continuous active duty with the United States Air Force ("Air Force") from January 14,

1985, until September 30, 2006, when he voluntarily retired.  Tr. 000087, 000919, 001005.[1]  While

in the Air Force, Allen was accused of taking indecent liberties with a minor child and wrongfully

and willfully contributing to the delinquency of minor children.  The military charge sheet against

Allen contained one charge and three specifications.  Tr. 000106.  Allen was charged with violating

UCMJ, Article 134.  The claims, or "specifications," against Allen are summarized as follows:

> (1) taking indecent liberties with a female, W.P., who was under age 16 by placing a hand and face upon the minor's private parts and forcing the minor's hand upon Allen's private parts with the intent by Allen to gratify his sexual desires;

> (2) contributing to the delinquency of minor W.P. by providing alcoholic beverages to the minor, consuming alcoholic beverages with the minor, and providing cigarettes to the minor; and

> (3) contributing to the delinquency of minor J.G. by providing alcoholic beverages to the minor, consuming alcoholic beverages with the minor, and allowing the minor to operate a motor vehicle after consuming alcoholic beverages.

The incidents were alleged to have occurred on or about June 7 or 8, 2003.  Id.

The Air Force Office of Special Investigations referred the accusations against Allen for

action on February 5, 2004.  Tr. 001027-001031.  On February 18, 2004, the charge was "preferred."

---

[1]The citations designated as Tr. - - - - - are to a certified copy of the court-martial proceedings entitled United States v. Master Sergeant Joseph Allen.

Tr. 001032-001033.  In court-martial proceedings, a charge gets "preferred" once the charges and specifications are signed under oath before a commissioned officer of the armed forces, and the signer states that he or she has personal knowledge or has investigated the matters, and that they are true to the best of the signer's knowledge and belief.  R.C.M. 307.  Once a charge is preferred, the accused is to be informed of the charges as soon as practicable, and the proper authorities should take immediate steps to determine the disposition.  10 U.S.C. § 830, Art. 30.

After the charge is preferred, an Article 32 investigation is typically conducted.  An Article 32 investigation is to include inquiry into the truth of the charges, consideration of the form of the charges, and recommendation as to the disposition.  Id.  During the investigation, an accused has the right to be represented by counsel, to cross-examine witnesses against him, and to present anything he wants on his own behalf, either in defense of or in mitigation of the charge.  Id.  If the investigating officer recommends the matter proceed to trial, it is "referred" to a court-martial. 10 U.S.C. § 832, Art. 32; R.C.M. 405.

On March 23, 2004, an Article 32 investigation was held to consider the charge and specifications against Allen.  Tr. 001109.  At the conclusion of the investigation, the investigating officer recommended that the charge and specifications be referred to a general court-martial.  Id.  Accordingly, on April 27, 2004, the charge and specifications were referred to a general court-martial.  Trial was scheduled for July 19, 2004, with the time from June 1, 2004 to July 19, 2004, excluded by the military judge for speedy trial purposes.  Tr. 001036.

According to the record, the government indicated it was ready to proceed to trial on July 19, 2004.  Tr. 000497.  However, on June 30, 2004, Allen fired his appointed military defense counsel.  Tr. 000454.  On July 9, 2004, Allen's newly appointed attorney requested a continuance

until September 7, 2004.  Tr. 000454-000455.  Thus, the trial was rescheduled to begin on September 8, 2004.  Tr. 001037.  During the continuance, Allen's mother-in-law, whom Allen has alleged to be an "alibi witness," died.  She died on July 25, 2004.  Tr. 001038.

On August 27, 2004, the general court-martial convening authority withdrew and dismissed without prejudice the charge and specifications against Allen because the primary victim/witness ran away.  Tr. 000455, Tr. 001039.  The victim/witness was not located for over two months.  On November 8, 2004, the Grand Forks Police Department notified the Air Force that the victim/witness had returned to the area.  Tr. 001040.

On December 2, 2004, the charge and specifications were re-referred for trial to a general court-martial.  Tr. 001044.  On this same day, a general court-martial was convened by special order.  Tr. 001045.  On December 17, 2004, trial counsel notified defense counsel that she was ready to proceed to trial and that the speedy trial deadline was December 25, 2004.  Tr. 001047.  The military judge scheduled trial to begin on February 23, 2005.[2]  Tr. 001048.  The judge excluded for speedy trial purposes the time from December 17, 2004 to February 23, 2005.  Id.

A week before the February 2005 trial was to begin, Allen fired his attorneys.  Tr. 000455.  Two new military defense attorneys were appointed.  Id.  On February 25, 2005, the military judge approved the release of counsel and instructed the two newly appointed attorneys to sign an acknowledgment that Allen was advised of his right to counsel, including military counsel and civilian counsel, and that no further delays would be granted for firing counsel.  Id.  Trial was

---

[2] The record is unclear as to why the trial was scheduled on February 23, 2005, when the government was ready to proceed as of December 17, 2004.

4

rescheduled for May 10, 2005.  Tr. 001049.  The military judge excluded for speedy trial purposes the time period from February 24, 2005 to May 10, 2005.  Id.

On May 3, 2005, one week before trial was set to begin, Allen released one of his appointed military attorneys because he hired civilian counsel.  Tr. 000455.  The military judge held a conference on May 5, 2005.  Tr. 000456.  The record indicates that during the conference, Allen's civilian counsel requested the court's assurance that if he filed a notice of appearance, he would not have to be ready for trial on May 10, 2005.  Id.  Counsel also advised the court that he would not be available for trial until after Labor Day.  Id.  The government opposed Allen's request for a continuance.  Id.

On May 9, 2005, the military judge arraigned Allen.  Tr. 000448-000470.  During the hearing, the judge granted Allen's request for a continuance over the government's objection.  The judge reasoned that a continuance was appropriate given the seriousness of the charges and because Allen had "a lot at stake."  Tr. 000461.  The judge requested that the parties agree on a new trial date.  Tr. 000457.  The judge reiterated her concern that Allen had released numerous military defense counsel, which was resulting in the delay of the trial.  Tr. 000460.  She noted that in the future if Allen was unhappy with his counsel, his options would be to appear *pro se* or to be represented by one of the attorneys currently assigned to his case.  Id.

Trial was rescheduled to begin on August 22, 2005.  Tr. 001070.  The military judge excluded for speedy trial purposes the time from February 23, 2005 to August 22, 2005.  Tr. 001070.  On August 18, 2005, Allen filed a motion to dismiss, alleging a violation of his right to a speedy trial.  Tr. 001097-001108.

On August 23, 2005, the military judge held an Article 39(a) session.  Tr. 001071.  An Article 39(a) session is a proceeding in which the court is called to session by the judge to determine motions, among other issues, without the presence of other court members.  R.C.M. 803.  During the session, the judge heard arguments regarding Allen's motion to dismiss for violation of his right to a speedy trial.  Tr. 001085-001096.  The arguments focused on whether the government had withdrawn and dismissed the charge on August 27, 2004, when the primary victim/witness ran away, or whether the charge had simply been withdrawn, but not dismissed.  The distinction was important for Allen's motion because if the charge was merely withdrawn, the speedy trial clock continued to run under court-martial rules.  However, if the charge was withdrawn and dismissed, under the court-martial rules, the speedy trial clock stopped on August 27, 2004.

After reviewing the briefs and considering the arguments, the judge found that the court lacked jurisdiction to hear the case against Allen because the convening authority dismissed the charge and specifications on August 27, 2004.  Tr. 001092.  As a result, the charge against Allen was deemed dismissed until the government could establish that the convening authority only withdrew the charge, and did not dismiss it, or the government re-preferred the charge and the process started anew.

On August 31, 2005, the same charge and specifications against Allen were re-preferred.  Tr. 000532-000533.  A new Article 32 investigation was scheduled for October 3, 2005.  Tr. 001143.  Allen's military counsel acknowledged that since the charge was re-preferred, the process started anew.  Tr. 001109.  Allen's counsel objected to the same investigating officer being appointed on the re-preferred charge.  Id.  The judge granted Allen's request for a different

investigating officer and the Article 32 investigation was rescheduled for October 20, 2005.  Tr.
001112, 001143, 001149.

On September 6, 2005, Allen discharged his civilian counsel.  Tr. 001148.  To replace his
civilian counsel, the judge assigned a new military defense attorney to represent Allen.  Tr. 001149.
After the Article 32 investigation was completed, the charge and specifications were again referred
to a general court-martial by special order.  Tr. 000533.  Trial was scheduled for March 21, 2006.
Tr. 000520.  The judge excluded for speedy trial purposes the time from December 26, 2005 until
March 21, 2006.  Id.

On March 21, 2006, an Article 39(a) session was held.  Tr. 000521.  Two military defense
counsel represented Allen.  After being advised of his right to counsel, Allen requested a delay so
that he could hire a civilian attorney.  Tr. 000523.  However, once Allen acknowledged that he was
unable to pay for a civilian attorney, the judge denied his request for another continuance, and the
proceedings went forward as scheduled.  Tr. 000526.

Among other motions, Allen's military attorneys renewed his motion to dismiss for violation
of speedy trial.  Tr. 000356.  During the hearing, Allen's counsel acknowledged that as to the re-
preferred charge, there was no violation of R.C.M. 707, which requires that a trial be held within 120
days of preferral.  Tr. 000546.  Instead, Allen focused on the Sixth Amendment, arguing that the
government did not act in a "reasonably diligent manner" or with a good faith belief to act as it did.
Allen also argued the government's delay in processing his case prejudiced him and resulted in a
violation of his Fifth Amendment right to due process.  Tr. 000547, 001020-001022.  The judge
rejected Allen's arguments, finding no "egregious misbehavior" by the government and that the
government acted with reasonable diligence and good faith.  Tr. 000565.

Allen was tried by general court-martial on March 21-23, 2006.  Tr. 000517-000891.  He was found guilty of the charge and three specifications.  Tr. 001252.  Allen's sentence included a reprimand, reduced pay grade, forfeiture of $100.00 per month, three months of hard labor without confinement, and restriction to the Grand Forks Air Force Base for two months.  Tr. 001255.  The Commander approved the sentence on June 13, 2006.  Tr. 000893.

Post-trial, Allen requested under Article 69(a) that the Judge Advocate General review his case and that the military court's findings and sentence be set aside and the charges be dismissed.  A review was conducted as requested by Allen.  Tr. 000008, Tr. 000018-00023.  The Director of the United States Air Force Judiciary concluded that the findings and sentence were supported by law.  Tr. 000008.  He also directed that no further review by the United States Air Force Court of Criminal Appeals take place.  Id.  Thus, the findings and sentence became final.  Id.

Allen now appeals to this Court.  He seeks dismissal of the charge and specifications with prejudice, that his conviction be "set aside," that his name be removed from the sex offender registry database, that a public apology be issued to him and his family, that attorney fees be awarded, and that he be awarded compensatory and punitive damages.

## DISCUSSION

The parties have filed cross-motions for summary judgment.  Allen argues generally that his constitutional rights were violated because the government did not act in good faith when it withdrew the charge and then referred the same charge, which caused substantial delay.  He further argues that the government did not act in a reasonably diligent manner and did not have a reasonable, good faith belief to think it could proceed as it did.  Additionally, in his response to the Air Force's motion for summary judgment, Allen adds the following arguments:  he was not

confronted with all the witnesses against him; he did not have the compulsory process for obtaining witnesses in his favor; he was denied his right to civilian counsel; and he was not allowed to adequately prepare his defense because an alibi witness died before the trial was held.[3]

The Air Force contends that it is entitled to summary judgment on all of Allen's claims because there were no "fundamental defects" in the military court-martial proceedings, because Allen received a full and fair hearing on his constitutional claims, and because Allen failed to raise some of his claims in the court-martial proceedings.

**(1)     Jurisdiction**

Allen's Complaint asserts claims under 18 U.S.C. §§ 3161-3174, 42 U.S.C. § 1983, and the Fifth, Sixth, and Fourteenth Amendments to the Constitution.  While Allen does not mention habeas corpus as a basis for his action in the Complaint, he requests, among other things, that this Court set aside his military conviction and expunge his record.  (Doc. #7, p. 9).  Further, in objecting to the magistrate judge's recommendation that his request for IFP be denied, Allen states he is requesting "habeas relief."  (Doc. #3, p. 1).

An action challenging the validity of a conviction is appropriately filed as a petition for habeas corpus.  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).  Federal courts are authorized to grant writs of habeas corpus under 28 U.S.C. § 2241 if the petitioner is in custody.  United States v. Rumsfeld, 448 F.3d 403, 406 (10th Cir. 2006); Archuleta v. Hedrick, 365 F.3d 644, 648 (8th Cir. 2004).  Since Allen was not in custody when he brought this action, § 2241 cannot supply subject matter jurisdiction.  Id.

---

[3]Allen also makes cursory reference in his Complaint to his alleged inability to confront his accusers and that his alibi witness died before the trial.  Complaint ¶ F.

Nonetheless, the Supreme Court has held that § 2241 is not the only basis for a federal court to exercise subject matter jurisdiction over collateral attacks on court-martial proceedings. Rumsfeld, 448 F.3d at 406 (citing Schlesinger v. Councilman, 420 U.S. 738, 748-53 (1975)). A district court has subject matter jurisdiction to hear collateral challenges to military proceedings under 28 U.S.C. § 1331. Id. Thus, this Court finds it has jurisdiction to review Allen's claims under 28 U.S.C. § 1331.

**(2)     This Court's Standard of Review for Court-Martial Proceedings**

It must be recognized that military law is a "jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." Burns v. Wilson, 346 U.S. 137, 140 (1974). "Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights." Id. Although Congress is empowered under the Constitution to make rules for the government, including the military, it has never deemed it appropriate to confer on federal courts jurisdiction to directly review court-martial determinations or appellate jurisdiction to supervise the administration of criminal justice in the military. Schlesigner v. Councilman, 420 U.S. 738, 746 (1975). As a consequence, the valid, final judgments of military courts, like those of any court of competent jurisdiction not subject to direct review for errors of fact or law, generally have res judicata effect and further litigation on the merits is precluded. Id.

While a civilian court generally may not directly review a court-martial decision, it may, in appropriate circumstances, entertain a collateral attack on a court-martial decision. See Burns v. Wilson, 346 U.S. 137, 139 (1953) (civilian courts have jurisdiction over habeas corpus petitions filed by military prisoners); Harris v. Ciccone, 417 F.2d 479, 482 (8th Cir. 1969) (in military habeas

10

corpus cases, civilian courts have jurisdiction to determine whether the accused was denied any basic constitutional right). Thus, even though the military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person's constitutional rights, see Burns, 346 U.S. at 142, civilian courts have jurisdiction to determine whether the accused was denied a constitutional right. See Harris, 417 F.2d at 481; Schita v. Cox, 139 F.2d 971, 971 (8th Cir. 1944) (federal court justified in reviewing military decision when constitutional issues raised). Because congressional judgment must be respected and it must be assumed that the military court system will vindicate a serviceperson's constitutional rights, civilian court jurisdiction only arises after all available military remedies have been exhausted. Councilman, 420 U.S. at 758.

Although a civilian court may review a collateral attack on a court-martial decision, the review is to be limited and narrow. It is not the duty of the civilian court to re-examine and re-weigh the evidence or events to prove or disprove the accused's allegations. Burns, 346 U.S. at 144. When a constitutional issue is alleged by a serviceperson that involves a factual determination, the civilian court's inquiry is limited to determining whether the military court gave "full and fair consideration" to the issue. Harris, 417 F.2d at 481. In order to void a court-martial judgment on collateral review, there must be a "fundamental" error. Rumsfeld, 448 F.3d at 408.

Courts have had some difficulty applying the "full and fair" test enunciated in Burns. Brosius v. Warden, U.S. Penitentiary, Lewisburg, PA, 278 F.3d 239, 244 (3d Cir. 2002). While it does not appear that the Eighth Circuit has spoken directly on this issue, Burns suggests that full and fair consideration means simply "hear[ing] petitioners out." Id. Thus, it follows that a military court's judgment will not be voided by a civilian court if the military court satisfied the Burns "fair consideration" test. Rumsfeld, 448 F.3d at 408.

11

With these standards in mind, the Court turns now to Allen's claims.

**(3)**   **Allen's Claims**

In his summary judgment motion, Allen claims that his rights under court-martial rules, the Fifth Amendment, and the Sixth Amendment were violated by "government action and inaction." (Doc. #23, p. 3).   He then attacks various stages of the military proceedings.   This Court has attempted to separate and address each of Allen's claims below.

      **A.**   <u>**Speedy Trial**</u>

         *1.*   *Allen's Right to a Speedy Trial Was Not Violated under Court-Martial Rules.*

Allen argues his right to a speedy trial was violated when the government failed to bring him to trial within the time frame provided in Rule 707 of the Rules for Courts-Martial ("R.C.M."). Allen contends, as a result, the charge and specifications should have been dismissed by the military judge.   As explained below, this Court finds the military court gave full and fair consideration to Allen's claim and further finds no error in the military court's analysis.

R.C.M. 707 requires that an accused be brought to trial within 120 days after notice of preferral of charges, the imposition of restraint, or entry upon active duty, whichever is earlier.   The rule further provides that pretrial delays approved by a military judge or the convening authority shall be excluded.   R.C.M. 707(c).   Thus, as long as the length of an authorized delay is "reasonable" and the approving official did not abuse his or her discretion, the time is excluded from the 120-day speedy trial clock.   <u>United States. v. Fujiwara</u>, 64 M.J. 695, 699 (A.F. Ct. Crim. App. 2007).

The charge and specifications against Allen were preferred twice.   The charge was first preferred on February 18, 2004.   It was preferred again on August 31, 2005.   As to Allen's claim regarding the second preferral, which occurred on August 31, 2005, his counsel agreed at the pretrial

hearing that there had been no violation under Rule 707.  Tr. 000546-000567.  It was undisputed by Allen that trial occurred within 120 days of the second preferral.  This Court finds Allen was given a full and fair opportunity to be heard, and the military court did not err in rejecting his alleged violation of Rule 707, as it pertains to the charge preferred on August 31, 2005.

With regard to the February 18, 2004 preferral, Allen first argued that his speedy trial right was violated under court-martial rules in a motion to dismiss filed a week before the August 23, 2005 trial.  Allen claims that under Rule 707 he should have been tried by September 25, 2004. (Doc. #3, p. 1).

In analyzing Allen's argument, the military judge focused on whether the convening authority withdrew or dismissed the charge on August 27, 2004, when the primary witness ran away. If the charge was only withdrawn, the speedy trial clock continued to run after August 27, 2004. If the charge was dismissed, the speedy trial clock stopped under Rule 707.  United States v. Britton, 26 M.J. 24, 26 (C.M.A. 1988).

After reviewing the briefs and arguments, the judge found the charge was dismissed on August 27, 2004.  As a result, the judge concluded that the court lacked jurisdiction to go forward with the trial.  The case was deemed dismissed until the government could establish either that the charge had not been dismissed, or the charge was re-preferred and the process started anew. Because the judge found the charge was dismissed on August 27, 2004, the speedy trial clock stopped on this date.  Later, Allen's counsel agreed, noting that the speedy trial chronology proposed by the government should stop on August 27, 2004, the day of the dismissal of the charge.  Tr. 000545.

Despite the judge's finding that the charge was dismissed, Allen continues to argue that the charge was never dismissed, it was only withdrawn. There is no basis in the record to support his argument. In fact, at a hearing after the charge was re-preferred, Allen's counsel argued:

> It is abundantly clear that there is only one interpretation of the word "dismissal," and that is the same interpretation that the previous military judge made. The charges had been dismissed. So, clearly it wasn't a matter of interpretation on the previous military judge's part. The charges had been dismissed.

Tr. 000552-000553. Thus, as to the charge preferred on February 18, 2004, the speedy trial clock stopped under the court-martial rules on August 27, 2004, when the charge had been dismissed without prejudice. Allen has presented no evidence to demonstrate that the military judge failed to give full and fair consideration to his claim or that the judge fundamentally erred in her analysis.

Despite the clear language of R.C.M. 707, Allen also contends the charges should have been dismissed because the delays he believes were caused by the government with regard to the first preferral, including the government's "failure" to recognize that the charge had been dismissed, should not be excluded for speedy trial purposes. The version of Rule 707 that was in effect at the time Allen's case was pending, and currently, focuses on whether the requested delay is granted, not which party is responsible for the delay. United States v. Lazauskas, 62 M.J. 39, 41 (C.A.A.F. 2005). Thus, all pretrial delays approved by the convening authority or judge are excludable so long as approving them was not an abuse of discretion. Id.

In advancing his argument, Allen fails to acknowledge that a vast majority of the trial delays were at his request. The record is replete with continuance requests because he fired one or both of his attorneys. Allen also fails to acknowledge that the military judge approved the pretrial delays and excluded the delays for speedy trial purposes. Under the court-martial rules, all pretrial delays are excludable if approved by the judge or convening authority so long as approving them is not an

14

abuse of discretion.  R.C.M. 707(c); <u>Lazauskas</u>, 62 M.J. at 41.  Allen has presented no evidence that the military judge abused her discretion in approving the pretrial delays.

Moreover, the military judge rejected Allen's claim that the government acted in "bad faith" or tried to gain a tactical advantage when it proceeded as though the charges were withdrawn, and not dismissed.  Both parties acted as though the charge was withdrawn but not dismissed.  It was not until a week before trial in August 2005, that Allen objected to the manner in which the case was proceeding and moved to dismiss the charge.  Once Allen raised the speedy trial issue, the judge held a hearing, considered arguments by both parties, and rejected his claim.  This Court finds the military court gave full and fair consideration to Allen's claim and did not err in rejecting his argument that the government acted in "bad faith" or to gain a tactical advantage when it proceeded in the manner it did.

2.   *Allen's Right to a Speedy Trial Was Not Violated under the Sixth Amendment.*

As to his argument under the Sixth Amendment, Allen reiterates his claim that since the charge against him was withdrawn on August 27, 2004, and not dismissed, his right to a speedy trial was violated.   First, Allen's argument is flawed because the military court found after full consideration of the issue, and later his own attorney conceded, that the charge was not only withdrawn, but also dismissed on August 27, 2004.  Second, the delays Allen complains about were approved by the military court and do not rise to the level of a constitutional violation.   In determining whether a defendant has been deprived of his right to a speedy trial under the Sixth Amendment, the Supreme Court established a balancing test.  <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972).  A court should balance the length of the pretrial delay, the reasons for the delay, whether a speedy trial was demanded, and prejudice to the accused.  <u>Id.</u>  The military court examined these

factors and found no Sixth Amendment violation.  This Court finds the military court gave full and fair consideration to Allen's Sixth Amendment claim and further finds no fundamental error in the military court's analysis.

Allen submitted a 121-page motion to dismiss with attachments addressing his constitutional arguments to the military judge.  Tr. 000536.  The government responded with 10 pages.  Tr. 000537.  The judge also heard oral arguments on the constitutional issues.  Tr. 000544-000561. Following the hearing, the military judge determined that the government acted with reasonable diligence and in good faith in handling this matter.  It is not this Court's role to re-weigh the evidence.  Burns, 346 U.S. at 144.  Although the overall delay between when the charge was first preferred and when Allen was tried and convicted was just over two years, it was reasonable according to the military court, particularly given that many of the delays were at Allen's request and Allen did not object to the delays or demand a speedy trial for a year.  Allen ignores that the government was ready to proceed to trial in July 2004 (five months after the charge had been preferred), but trial was delayed when he released both of his military defense counsel.  As noted by the military judge, Allen then repeatedly fired his counsel and requested delays to accommodate his new counsel's schedule and ability to prepare for trial.

The focus of Allen's argument is on the delay created when the government treated the dismissal as merely a withdrawal.  However, Allen's counsel also treated the dismissal as a withdrawal, and did not object to the manner in which the case was proceeding until a week before trial was to commence in August 2005.

Moreover, after the judge ruled that the charge had been dismissed and it was re-preferred, Allen continued to fire his counsel and requested continuances of the trial date.  Even on the day of

trial, Allen requested a continuance so he could hire civilian counsel.  Allen's actions do not support his claim that he wanted a speedy trial, but the government or military court violated his constitutional right to one.  Thus, upon consideration of the reasons for the delays and Allen's assertion of his right to a speedy trial, this Court finds that the military judge fully and fairly considered the issue and did not err in her analysis.

The last factor to consider in a Sixth Amendment speedy trial claim is prejudice to the accused.  Allen claims the prejudice is found "primarily in his right to counsel."  (Doc. #3, Att. 4, p. 10).  In May 2005, Allen retained a civilian lawyer; however, the relationship ended after a fee dispute arose and Allen could not afford to pay the additional funds that were requested to continue the representation.  Tr. 001050.  Because Allen did not have the money to retain another civilian lawyer for trial in March 2006, Allen claims he was denied his right to counsel.

An accused in a court-martial proceeding is entitled to military defense counsel at the government's expense.  10 U.S.C. § 827; R.C.M. 506.  An accused may also hire civilian counsel at his own expense.  10 U.S.C. § 838; R.C.M. 506.  However, the right to civilian counsel is not absolute and must be balanced against society's interest in the efficient and expeditious administration of justice.  See United States  v. Young, 50 M.J. 717, 721 (A.C.C.A. 1999); Keys v. Cole, 31 M.J. 228, 234 (C.M.A. 1990); United States v. Thomas, 22 M.J. 57, 59 (C.M.A. 1986).  An accused cannot utilize a request to hire civilian counsel in order to unreasonably delay the progress of the trial.  Thomas, 22 M.J. at 59.

Allen was represented by military defense counsel throughout the court-martial proceedings.  For a short time, he was also represented by civilian counsel.  At the time of trial on the re-preferred charge, Allen requested a continuance to retain civilian counsel.  However, Allen admitted that he

17

could not afford to pay for a lawyer.  Tr. 000524.  Because Allen must bear the expense of civilian counsel and he could not do so, the military judge denied his request for a continuance, and Allen agreed to move forward with the two military defense counsel that had been appointed.  Tr. 00525-00526.

Allen has not made a claim of ineffective assistance of counsel.  Instead, he claims he was not able to be represented by counsel of his choice.  Allen's claim was properly rejected by the military court.  The military judge went to great lengths to accommodate Allen in his choice of representation.  It was only when Allen attempted to unreasonably delay trial to hire civilian counsel, which he admitted he could not afford, that the judge denied his request.   There was no abrogation of Allen's right to counsel.  Allen was provided with all that the law and military rules require that he have by way of attorney representation.  Young, 50 M.J. at 721; Keys, 31 M.J. at 234; Thomas, 22 M.J. at 59.  This Court concludes the military judge did not err in finding that the prejudice Allen alleges in support of his Sixth Amendment claim does not rise to the level of a constitutional violation.

**B.** **Due Process**

*1.* *Allen's Right to Due Process under the Fifth Amendment Was Not Violated.*

Allen's Fifth Amendment claim is somewhat difficult to distinguish from his Sixth Amendment claim because he often combines the two in his motion papers.  It appears Allen contends the government's conduct was "egregious" because it took 202 days to arraign him and 26 months to re-prefer the charges.  (Doc. #41, p. 4).  According to Allen, the delays prejudiced him because an "alibi witness" died during the pendency of the proceedings, there was a tremendous

impact on his personal and professional life, and he was denied the counsel of his choice.  The military judge considered each of Allen's arguments and rejected them.

To prevail on a Fifth Amendment claim, Allen must show that any delays were the result of an "egregious or intentional tactical delay by the government and he suffered actual prejudice." United States v. Fujiwara, 64 M.J. 695, 700-01 (Ct. Crim App. A.F. 2007).  After briefing and argument by the parties, the military judge, applying this standard, found no egregious misbehavior by the government or that the delays were tactical.  Tr. 000565.  The judge specifically considered the delay which occurred during the time it was disputed as to whether the convening authority intended to withdraw and dismiss Allen's case or whether it intended only to withdraw the case.  She found the delay was neither egregious nor tactical, but was an "interpretation delay."  Id.  The judge noted that once this issue was raised by Allen and resolved by the court, the government promptly moved the case forward.  This Court finds that the military court gave full and fair consideration to Allen's due process claim and did not err in its analysis when it determined the government did not act egregiously or for tactical purposes.

The second part of the due process analysis involves prejudice.  Allen claims he was prejudiced because an "alibi witness," his mother-in-law, died during the pendency of the proceedings.  Allen's mother-in-law died on July 25, 2004.  The trial was initially scheduled for July 19, 2004.  Allen requested the continuance of the trial from July 2004 until September 2004.  If not for Allen's request for a continuance, the case would have been tried before his mother-in-law died. The fact that Allen's mother-in-law died before trial, while unfortunate, does not give rise to a constitutional claim, particularly when her death occurred at a time when the delay was at Allen's request.

19

Allen also claims he was prejudiced because during the pendency of the proceedings he was "repeatedly placed on administrative hold," which caused him to be unable to obtain new assignments, take "career enhancing temporary tours of duty," enroll in career-furthering courses, or obtain approval for retirement.  (Doc. #3, Att. 4, pp. 10-11; Doc. #32, pp. 4-5).  Rule 304(h), Rules for Courts-Martial, permits the military to place an accused serviceperson on administrative restraint, including administrative hold, before and during the disposition of the alleged offense. Allen was not arrested or incarcerated at any time during the court-martial proceedings. In a statement he submitted to the military court before sentencing, he stated: "Since late 2003, for the most part, I have been allowed to continue my normal duties."  Tr. 001007.  Thus, even though Allen was placed on administrative hold, he was allowed to continue his normal duties.  As noted by the military judge, the stressors Allen encountered were typical of those faced by defendants.

The Court-Martial Rules, as well as the Constitution, guide the time for when the accused must be brought to trial.  The military court found no violation of Allen's right to a speedy trial, and this Court agrees.  Thus, this Court finds the negative impact which the charge had on Allen's personal and professional life, while stressful for Allen and his family, does not give rise to a due process claim.

Finally, Allen claims his right to due process was violated because he did not have the counsel of his choice at trial.  This Court has already rejected Allen's claim in the context of the Sixth Amendment.  Because there was no abrogation of Allen's right to counsel, his due process claim on this basis fails.

20

C.     <u>**Right to Confront Witnesses**</u>

Allen argues that the government violated his Sixth Amendment right to be confronted by the witnesses against him because one of the victims refused to participate in investigatory sessions or the court-martial proceedings. (Doc. #32, p. 8).  Allen claims he has a right to be confronted by "all the witnesses against him."  <u>Id.</u>

Allen did not raise this issue before the military court.  With regard to claims arising out of military proceedings, federal court jurisdiction is limited to those claims raised in the military court. <u>See</u> <u>Watson v. McCotter</u>, 782 F.2d 143, 145 (10th Cir. 1986) (citing <u>Burns</u>, 346 U.S. at 142); <u>Martinez v. United States</u>, 914 F.2d 1486, 1488 (Fed. Cir. 1990).  Absent a showing of "good cause and prejudice," a plaintiff's failure to raise his constitutional claim in the military court system bars him from raising it in federal court.  <u>Martinez</u>, 914 F.2d at 1488.   Since Allen did not raise his confrontation claim before the military court, the military court did not consider it.  Allen has not shown good cause and prejudice for his failure to raise the claim during the court-martial proceedings.

Even if Allen had raised the claim below, it is without merit.  The Confrontation Clause of the Sixth Amendment does not require the government to call at trial all of the witnesses.  <u>See</u> <u>Cooper v. State of California</u>, 386 U.S. 58, 62 n.2 (1967); <u>United States v. Morgan</u>, 757 F.2d 1074, 1076 (10th Cir. 1985) (Confrontation Clause is not a guarantee that the prosecution will call all the witnesses it has against the defendant).  Thus, Allen's claim that his right of confrontation was violated because a witness was not called by the government lacks merit.

D.     **Right to Review**

In his Complaint, Allen suggests that he is entitled to relief because his claims were not reviewed by the United States Air Force Court of Criminal Appeals.  (Doc. #7, p. 3).  Under court-martial rules, cases are referred to the Court of Criminal Appeals if the sentence is death, dismissal of a serviceperson, dishonorable discharge, bad-conduct discharge, or confinement for one year or longer.  R.C.M. 1201.  Allen was not sentenced to death, confined, or subjected to punitive discharge; therefore, he did not have a right to appellate review by the United States Air Force Court of Criminal Appeals.  10 U.S.C. § 866; R.C.M. 1201(a).

In contrast, as required, Allen's case was reviewed by the Judge Advocate General under Article 69(a).  Article 69(a) permits the Judge Advocate General to modify or set aside findings or the sentence if it determines any part of the findings or sentence is unsupported in law, or if reassessment of the sentence is appropriate.  R.C.M. 1201(b).  The Judge Advocate General is also allowed to direct review, in its discretion, to the Court of Criminal Appeals.  In Allen's case, the Judge Advocate General found that the findings and sentence were supported in law, and directed no further review of the record by the Court of Criminal Appeals.  Tr. 000008.  As a result, Allen's sentence became final.  Because Allen received the review he was entitled to under court-martial rules, his claim that his case was not appropriately reviewed has no merit.

## DECISION

The Court has carefully reviewed each of Allen's claims.  As to the claims Allen raised before the military court, this Court finds that the military judge gave full and fair consideration to his claims and did not err in its analysis or in rejecting them.  As to the claims Allen raises for the first time in this Court, the Court finds that they have no merit.  Accordingly, the Court **GRANTS**

Defendant Air Force's Motion for Summary Judgment and **DENIES** Plaintiff Allen's Cross-Motion

for Summary Judgment.

       **IT IS SO ORDERED.   LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 25th day of September, 2008.


                        /s/   Ralph R. Erickson
                  Ralph R. Erickson, District Judge
                  United States District Court